FILED

# UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

*Amended*

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 28 U.S.C. § 1331 or § 1346

'12 AUG 12 PM 2: 27

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

RICHARD E. HENSARLING          ,

Inmate #  09991-018          .
  (Enter full name of Plaintiff)

vs.

CASE NO: 5:10 CV-344-OC-33PRL
(To be assigned by Clerk)

D.B. Drew, etc.;          ,

et al.,          ,

_____ ,

_____ ,

_____ .

(Enter name and title of each Defendant.

If additional space is required, use the

blank area below and directly to the right.)

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

## I.   PLAINTIFF:

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:  Richard E Hensarling

Inmate Number  09991-018

Prison or Jail:  Marianna   F.C.I.

Mailing address:  P.O. Box # 7007

Marianna,Fl.

32447-7007

## II.   DEFENDANT(S):

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address.  Do the same for <u>every</u> Defendant:

(1)   Defendant's name:  United States Of America

Official position:  Government

Employed at:  White House

Mailing address:  1600 Pennsylvania  Av.

Washington  D.C. 20530

(2)   Defendant's name:  D.B. Drew

Official position:  Warden

Employed at:  F.C.C. Coleman

Mailing address:  846 N.E.54th Terrace

Coleman,Fl. 33521

(3)   Defendant's name:  L. Williams

Official position:  Captain

Employed at:  F.C.C. Coleman

Mailing address:  846 N.E. 54th Terrace

Coleman,Fl. 33521

## ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS

## I.   PLAINTIFF:

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:     xxxxxxxxxxxxxxxxx

Inmate Number          zxxxxxxxxxxxxxxxxx

Prison or Jail:          xxxxxxxxxxxxxxxxx

Mailing address:        xxxxxxxxxxxxxxxxx

                         xxxxxxxxxxxxxxxxx

                         xxxxxxxxxxxxxxxxx

## II.   DEFENDANT(S):

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for <u>every</u> Defendant:

(1)   Defendant's name.    Grady

      Official position:     S.O.I. Unicor

      Employed at:          F.C.I. Herlong

      Mailing address:      P.O. Box 900

                            Herlong,C.A. 96113

(2)   Defendant's name:    Moody

      Official position:     Unicor Foreman

      Employed at:          F.C.C. Coleman

      Mailing address:      846 N.E. 54th Terrace

                            Coleman,Fl. 33521

(3)   Defendant's name:    Hadaway

      Official position:     Unicor Foreman (last known position)

      Employed at:          F.C.I. Beaumont Medium

      Mailing address:      P.O. Box 26045

                            Beaumont,Tx. 77720

**<u>ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS</u>**

2

## I.    PLAINTIFF:

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:     xxxxxxxxxxxxxxxxxxxxxxxx

Inmate Number          xxxxxxxxxxxxxxxxxxxxxxxx

Prison or Jail:        xxxxxxxxxxxxxxxxxxxxxxxx

Mailing address:       xxxxxxxxxxxxxxxxxxxxxxxx

                       xxxxxxxxxxxxxxxxxxxxxxxx

                       xxxxxxxxxxxxxxxxxxxxxxxx

## II.   DEFENDANT(S):

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address.  Do the same for every Defendant:

(1)  Defendant's name:   Higinbotham

     Official position:   Unicor Foreman       :

     Employed at:         F.C.C. Coleman

     Mailing address:     847 N.E. 54th Terrace

                          Coleman,Fl. 33521

(2)  Defendant's name:   McGlothren

     Official position:   I-2 Unit Counsler

     Employed at:         F.C.C. Coleman

     Mailing address:     846 N.E. 54th Terrace

                          Coleman,Fl. 33521

(3)  Defendant's name:   Jefferson

     Official position:   I-2 Case Mgr.

     Employed at:         F.C.C. Coleman

     Mailing address:     846 N.E. 54th Terrace

                          Coleman,Fl. 33521

**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**

2

I.      PLAINTIFF:

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:      xxxxxxxxxxxxxxxxxxxxxxx

Inmate Number           xxxxxxxxxxxxxxxxxxxxx

Prison or Jail:         xxxxxxxxxxxxxxxxxxxx

Mailing address:        xxxxxxxxxxxxxxxxxxxxxx

                        xxxxxxxxxxxxxxxxxxxx

                        xxxxxxxxxxxxxxxxxxxx

II.     DEFENDANT(S):

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for every Defendant:

(1)   Defendant's name:    I-2 Unit Officer on the 3:30pm to 11:30 pm shift 4-17-09

      Official position:   Unit Officer       :

      Employed at:         F.C.C. Coleman

      Mailing address:     846 N.E. 54th Terrace

                           Coleman, Fl. 33521

(2)   Defendant's name:    xxxxxxxxxxxxxxxxxxxxx

      Official position:   xxxxxxxxxxxxxxxxxxxxx

      Employed at:         xxxxxxxxxxxxxxxxxxxx

      Mailing address:     xxxxxxxxxxxxxxxxxxxxx

                           xxxxxxxxxxxxxxxxxxxxxx

(3)   Defendant's name:    xxxxxxxxxxxxxxxxxxxxx

      Official position:   xxxxxxxxxxxxxxxxxxxxx

      Employed at:         xxxxxxxxxxxxxxxxxxxxx

      Mailing address:     xxxxxxxxxxxxxxxxxxx

                           xxxxxxxxxxxxxxxxxxxxx

**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**

2

**NOTE: THE COURT WILL NOT REVIEW THE COMPLAINT UNLESS THE
FOLLOWING QUESTIONS HAVE BEEN ANSWERED IN FULL.**

**III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES**

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action
regarding conditions or events in any prison, jail or detention center. 42 U.S.C. §
1997e(a). Plaintiff is warned that any claims for which the administrative grievance
process was not completed prior to filing this lawsuit may be subject to dismissal.**

**IV.   PREVIOUS LAWSUITS**

**NOTE: FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES
MAY RESULT IN THE DISMISSAL OF THIS CASE.**

A.   Have you initiated other actions in **state court** dealing with the same or similar
facts/issues involved in this action?

Yes( x)                    No(  )

1.   Type of action (civil rights, habeas corpus, etc.): CIVIL ACTION

2.   Parties to previous action:

  a.   Plaintiff(s): RICHARD E. HENSARLONG

  b.   Defendant(s): ERIC  AZOTEA

3.   County and judicial circuit: SUMTER COUNTY 5th.CIRCUT

4.   Case docket #: 2010-CA-000430

5.   Approximate filing date: April 14,2010

6.   If not still pending, date of dismissal: xxxxxxxxxxxxxxxxx

7.   Basis of dismissal: xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

8.   Facts and claims of case: Aggravated Assault, Personal
Bodily Injury.

Case is currently in Default by defendant.Trial
set for July 1st.2013
**(Attach additional pages as necessary to list state court cases.)**

3

B. Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes( x )                    No(  )

1. Type of action (civil rights, habeas corpus, etc.): __CIVIL ACTION__

2. Parties to previous action:

   a. Plaintiff(s): __RICHARD E. HENSARLING__

   b. Defendant(s): __D.B.DREW,etc.;et al.,__

3. District and judicial division: __Florida Middle Ocala__

4. Case docket #: __5:10-cv-344__   5. Approximate filing date: __10-12-2010__

6. If not still pending, date of dismissal:  Oc-33MAP  __xxxxxxxxxxxxxxx__

7. Basis of dismissal: __No Dismissal Amended Complaint__

8. Facts and claims of case: __Constitutional,Bodily Injury__

   __xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx__

**(Attach additional pages as necessary to list other federal court cases.)**

C. Have you initiated other actions (*besides those listed above in Questions (A) and (B))* in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( x )                    No( x )

If YES, describe each action in the space provided below. If more than one, describe all additional cases on a separate piece of paper, using the same format as below.

1. Type of action (civil rights, habeas corpus, etc.): __xxxxxxxxxxxxxxxxx__

2. Parties to previous action:

   a. Plaintiff(s): __RICHARD E. HENSARLING__

   b. Defendant(s): __U.S.A.__

4

WHEN I LOST MY EYE DUE TO THIS INCIDENT,I SENT MY SENTENCING JUDGE PATRICA FAWSEET ORLANDO A MOTION SEEKING THE LOW END OF MY GUIDELINES DUE TO THE NEWLY SUBSTAINED INJURY.MOTION DENIED.

3. District and judicial division: XXXXXXXXXXXXXXXXXXXXXXXXXXXXX

4. Case docket #: XXXXXXXXXXXX   5. Approximate filing date: XXX

6. If not still pending, date of dismissal: XXXXXXXXXXXXXXXXXXXXXXXXX

7. Reason for dismissal: XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

8. Facts and claims of case: XXXXXXXXXXXXXXXXXXXXXXXXXX

**(Attach additional pages as necessary to list cases.)**

D.   Have you ever had, either while you were incarcerated or while you were not incarcerated, any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service?  If so, identify each and every case so dismissed:

Yes( )                          No( X )

1. Type of action (civil rights, habeas corpus, etc.): X X X X X X X

2.    Parties to previous action:

a.    Plaintiff(s): X X X X X X X X X X X X X

b.    Defendant(s): X X X X X X X X X X X X X

3. District and judicial division: X X X X X X X X X X

4. Name of judge: X X X X X X X   Case Docket # X X X

5. Approximate filing date: X X X X X X X Dismissal date: X X X

6. Reason for dismissal: X X X X X X X X X X X X X X X

**(Attach additional pages as necessary to list cases.)**

❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀

- Continue to next page -

5

## V.    STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places.  Do not make any legal arguments or cite to any cases or statutes.  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

_____

_____

_____

_____

_____

_____

_____

_____

!!!!!   PLEASE SEE ATTACHED !!!!!

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

6

_____
_____

## VI.   STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated.  Be specific.  Number each separate claim and relate it to the facts alleged in Section V.  **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

_____
_____
_____
_____
_____ !!!!! PLEASE SEE ATTACHED !!!!! _____
_____
_____
_____

## VII.   RELIEF REQUESTED:

State briefly what relief you seek from the Court.  Do not make legal arguments or cite to cases/ statutes.

_____
_____ !!!!! PLEASE SEE ATTACHED !!!!! _____
_____
_____
_____

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

8-8-2012
(Date)                                                     (Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): ☒ delivered to prison officials for mailing or ☒ deposited in the prison's internal mail system on: the ___8___ day of _August_____, 20_12_.

(Signature of Plaintiff)

Revised 2/12

7

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RICHARD E. HENSARLING,            )
              Plaintiff,          )
                                  )
                                  )
        v.                        )    CASE NO.   5:10-CV-344-OC-33PRL
                                  )
                                  )    DEMAND FOR JURY TRIAL
D.B. DREW, etc.;                  )
et. al.,                          )
              Defendants.         )

---

## AMENDED COMPLAINT

---

### I.   JURISDICTION & VENUE

1.   This is a "BIVENS ACTION" in light of Bivens v. Six
Unknown Agents of Fed. Bureau of Narcotic, 403 U.S. 388 (1971).
This court has jurisdiction in this case under 28 U.S.C. § 1331,
and 1343(a)(3).  Plaintiff seeks Prospective Relief under 18 U.S.C.
§ 3626.  Plaintiff's Federal Tort Claims are authorized by 28 U.S.C.
§§§ 1346(b), 2401(b), 2671 et seq..  Plaintiff seeks to redress the
deprivation, under color of Federal law, of rights secured by the
Constitution of the United States,  Other issues Plaintiff seeks
to redress are within the jurisdiction of this court under 18 U.S.C.
§ 4042.

2.   The United States District Court for the Middle District
of Florida, Ocala Division is the appropriate venue for this action
pursuant to 28 U.S.C. § 1391(b)(2).  The events giving rise to this
action occurred within the physical bounderies of the Middle District

of Florida, Ocala Division.

## II.   PLAINTIFF

3.   Plaintiff Richard E. Hensarling is and was at all times
mentioned herein, a federal prisoner of the United States Govern-
ment in the custody of the Federal Bureau of Prisons.  At the time
of the incident for which this claim is being brought forth, the
Plaintiff was being housed at F.C.C. Coleman U.S.P. II, Coleman,
Florida.  Plaintiff is currently being housed at F.C.I. Marianna,
Marianna, Florida.

## III.   DEFENDANTS

4.   Defendant – United States Government

5.   Defendant – D.B. Drew, who at the time of the incident
occurred, Warden of F.C.C. Coleman U.S.P. II.  Drew is legally
responsible for the overall operation of that prison and for the
welfare of all inmates housed within that prison.

6.   Defendant – L. Williams, who at the time the incident
occurred, was Captain of F.C.C. Coleman U.S.P. II.  He is legally
responsible for the overall operation of that prison and for the
welfare of all inmates housed within that prison.

7.   Defendant – Grady, who at the time contraband was given to
Plaintiff, was Factory Manager of UNICOR at F.C.C. Coleman U.S.P.
II and responsible for the overall operation of and for the wel-
fare of all inmates in that prison. (See Exhibit A )

- 2 -

8.   Defendant – Moody, who at the time contraband was given to Plaintiff, was Factory Foreman of UNICOR at F.C.C. Coleman U.S.P. II and was responsible for the overall operation of and for the welfare of all inmates in that prison.

9.   Defendant – Hadaway, who at the time contraband was given to Plaintiff, was Factory Foreman of UNICOR at F.C.C. Coleman U.S.P. II and was responsible for the overall operation of and for the welfare of all inmates in that prison.

10.   Defendant – Higginbotham, who at the time Inmate Eric Azotea and Plaintiff were separated during the incident, was a Factory Foreman of UNICOR at F.C.C. Coleman U.S.P. II and was legally responsible for the overall operation of and for the welfare of all inmates in that prison.

11.   Defendant – Jefferson, was the I-2 Case Manager at F.C.C. Coleman U.S.P. II at the time of the incident and was legally responsible for the overall operation of and for the welfare of all inmates in that prison.

12.   Defendant – McGlothren, was the I-2 Counselor at F.C.C. Coleman U.S.P. II at the time of the incident and was legally responsible for the overall operation of and for the welfare of all inmates in that prison.

13.   Defendant – name unknown, was I-2 Unit Correctional Officer on duty from 3:30 P.M. until 11:30 P.M. on April 17, 2009,(the shift on duty at the time of the incident), and was legally responsible for the overall operation of and for the welfare of all inmates in that prison.

- 3 -

14.   Each defendant is sued individually and in his or her official capacity.   At all times mentioned in this complaint, each defendant was acting under color of Federal law.

## IV.   FACTS OF THE CASE

15.   At all times relevant to this case, Plaintiff Richard E. Hensarling was being housed at F.C.C. Coleman U.S.P. II based on the needs of executive staff of that institution.   Plaintiff's custody level, as determined under B.O.P. PS 5100.08 should not have had him housed at the U.S.P. level. (See Exhibit A)

16.   Officer's Grady, Moody, and Hadaway gave an unauthorized item of contraband to Plaintiff Hensarling showing favoritism and preferrential treatment. (See Exhibit A )

17.   At the point that the item of contraband became an apparant safety and security risk for Plaintiff, Officers Moody, Hadaway, and Higginbotham were all three present and were involved in a reckless attempt to diffuse the matter.

18.   Plaintiff spoke to I-2 Unit Team staff Jefferson and McGlothren, making them both aware that they needed to move Plaintiff based on potential threats displayed by Eric Azetea.

19.   On April 17, 2009, after the 4 P.M. count at F.C.C. Coleman U.S.P. II, Unit I-2, Plaintiff spoke to Unit Officer, name unknown, while he was at the assigned Officer's station doing volunteer "breathalyzer tests", and told him that there were threats being made toward him by inmate Eric Azotea.

- 4 -

20.  At the time the incident took place, (apprx. 9:00 P.M.,
April 17, 2009, Unit I-2 F.C.C. Coleman), the assigned housing unit
officer was out of eyesight and earshot in a secondary office surf-
ing the internet, talking on the phone, and playing music on a set
of desktop speakers.

## V.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

21.  Plaintiff Hensarling has used the prison grievance pro-
cedure "available" to him at F.C.C. Coleman, U.S.P. II.

22.  Plaintiff has attached an "Administrative Remedy Time-
line" that was prepared by Plaintiff on march 8, 2010. (See attached
Exhibit - B).

23.  Plaintiff has reasonably and in good faith pursued the
exhaustion of his available administrative remedy procedures.  The
requirement of "availability" under the P.L.R.A. is meant to be
accessible, within one's reach, at one's disposal.  After the incident
occurred on the night of 4/17/2009, Plaintiff was placed in the
Special Housing Unit, (S.H.U. or better known as the hole), until
10/15/2009.

24.  Administrative Remedy Timeline will provide this court
with a truthfull account and detail of the frustration Plaintiff
endured throughout this ordeal.  Plaintiff can provide the court
with any and all documentation to support everything contained in
the Timeline.

25.  Plaintiff sought through the Administrative Remedy

- 5 -

process provided to him through the B.O.P. an outside, unbiased and thorough investigation into this matter. Plaintiff requested the collection and securing of all evidence. (See attachments in Exhibit ___). Plaintiff's mother even called the Federal Bureau of Investigation Field Office in charge of investigation of crimes at F.C.C. Coleman. That office is located in Jacksonville, Florida. The Agent in charge told my mother, "We work under 'Selective Prosecution'". Plaintiff feels this is a violation under the equal protection of the law.

26. To me, there is no remedy that the B.O.P. can provide for me. They surely are not going to replace my eye. The only remedy I seek is through this court and equal protection of all laws.

## VI.  LEGAL CLAIMS

27. Plaintiff realleges and incorporates by reference paragraphs 1 - 26.

28. This is a "Personal Injury" case in light of the provisions of the Federal Tort Claims Act, against the United States of America for their agents, servants, and employees of the United States, who breached their duty of care by failure to provide protection and safekeeping of Plaintiff while confined at F.C.C. Coleman - U.S.P. II.

29. Defendant Warden Drew clearly established poor management and regulation skills, while operating under the direction of the Attorney General, and the laws set forth under the Eighth Amendment of the United States Constitution as well as B.O.P. PS 4042,

- 6 -

and PS 3420.09.  Defendant Warden Drew was operating in the capacity
of a U.S.P. Warden at F.C.C. Coleman U.S.P. II during the time the
incident in this claim occurred.  Warden Drew's lax management skills
as well as his inability to enforce the laws set forth by the U.S.
Constitution and those under the B.O.P. Program Statements; Warden
Drew is in violation of these statutes and directives by causing
Plaintiff Hensarling pain, suffering, physical injury and emotional
distress.

    30.  Defendant Captain L. Williams clearly established poor
authority skills while operating under the direction of Warden Drew
in the capacity of Captain at F.C.C. Coleman U.S.P. II, during the
time of the incident in this claim occurred.  Captain Williams
displayed a deliberate indifference to a foreseeable and unreasonable
risk of serious harm.  He did not enforce the importance of the
housing unit Correctional Officer position, allowing Officers to
ignore their duties as Correctional Officers by allowing them the
entertainment of a secondary office equiped with telephone and
internet access for not-duty related activities,  Subpoenaed ISP
(Internet Service Provider), and telephone records will verify
Paintiff's claim.   Housing Unit Officer's job description is
primarily the safety, security, and accountability of all inmates
within their unit.  However, in this situation, Unit Officers are
allowed to spend more time on the phone or internet than in the
performance of their duties.  This situation is conducive to the
type of conduct which led to the incident in this claim.  The
deliberate indifference of Captain Williams in the failure to
enforce policy is in violation of Plaintiff Hensarling's Eighth

Amendment right to protection of law, causing Plaintiff pain, suffering, physical injury, and emotional distress.

31.   Defendant Grady clearly established causation in his decision to tell Officer Moody to bring Inmate Hensarling an item of contraband that he (Mr. Grady), told inmate Hensarling he was unauthorized to issue.  Plaintiff very well could not travel outside the confines of a U.S.P. and go purchase the item.  It was Defendant Grady's duty to follow B.O.P. PS 3420.09 (Standards of Employee Conduct), when he had his subordinate bring an item into the prison which which he told me was unauthorized,  Defendant Grady breached his duty and by his actions was responsible for the causation of Plaintiff's injury.  Defendant Grady, as a UNICOR employee within the confines of F.C.C. Colemen U.S.P. II, acting under the color of Federal law, violated Plaintiff Hensarling's rights under the Eighth Amendment to the United States Constitution, B.O.P. PS 4042 and PS 3420.09 by causing Plaintiff Hensarling pain, suffering, physical injury and emotional distress.

32.   Defendant Moody, although acting upon the direction of his supervisor, was responsible for injuries caused and subsequent damage once it was clearly established that there was a threat and substantial risk to Plaintiff's safety.  Defendant Moody opted to ignore the circumstances in hope that the situation would work itself out.  Defendant Moody even vebally told Plaintiff, "Yaw don't fight".  Once Defendant Moody was aware of the clearly established threat caused by the introduction of contraband which he had brought in, his failure to follow proper procedures violated Plaintiff Hensarling's rights under the Eighth and Fourteenth Amendments to the

- 8 -

United States Constitution, as well as violating B.O.P. PS 4042
and PS 3420.09 ; actions which caused Plaintiff Hensarling pain,
suffering, physical injury and emotional distress.

33.  Defendant Hadaway was, in Plaintiff's opinion, by far
the worst in neglecting his responsibilities and duties as set
forth in B.O.P. PS 3420.09,  Defendant Hadaway was present and
acting under the color of Federal law when the item of contraband
was given to Plaintiff.  Defendant Hadaway was present when clearly
established threats towards Plaintiff's safety and security was
voiced by Inmate Azotea,  Defendant Hadaway also opted to ignore
Plaintiff's request to be moved to a different housing area.
Defendant Hadaway's violations of B.O.P. PS 4042 and PS 3420.09
amounted to a violation of Plaintiff Hensarling's Eighth Amend-
ment rights of the United States Constitution by causing Plaintiff
pain, suffering, physical injury and emotional distress.

34.  Defendant Higginbotham was merely present in UNICOR
Factory, F.C.C. Coleman U.S.P. II, when the threats of physical
harm became apparrant.  Defendant Higgingbotham even pulled Plaintiff
to the side and asked Plaintiff if there was going to be a problem.
Plaintiff told him, "Yes".  Plaintiff asked to be moved.  All
three UNICOR Officers (Moody, Hadaway, and Higginbotham), had the
authority to contact the I-2 Unit team or the Lieutenant's
Office and report the incident and have Plaintiff moved to a
safer housing unit as Plaintiff requested and circumstances
dictated.  The actions or lack of action violated the standards
set forth in B.O.P. PS 4042 and PS 3420.09 and as such violated
the Eighth Amendment rights of Plaintiff Hensarling as guaranteed

- 9 -

## ADDENDUM TO VI.LEGAL CLAIMS

*.) Paragraph 35.) was accientdently left out.

35.under the United States Constitution by causing Plaintiff Hensarling pain, suffering,physical injury and emotional distress.

35.Defendant Jefferson,When approached by Plaintiff was made aware of the potential threats towards Plaintiff's safety and asked to be moved. The excuse given by Defendant Jefferson was that she was to busy dealing with the aftermath of the recent riot that had taken place is unacceptable..Defendant Jefferson failed in her duties and responsibilities for the safety and welfare of the inmates at F.C.C. Coleman U.S.P. ‖ which violated Plaintiff Hensarling's rights under the Eighth Amendment to the United States Constitution as Plaintiff Hensarling suffered pain,suffering, physical injury and emotional distress.

-9 (a)-

36. Defendant McGlothren, when approached by Plaintiff was made aware of the potential threats toward Plaintiff's safety and asked to be moved. The excuse given by Defendant McGlothren that she was busy dealing with the aftermath of the recent riot that had taken place is unacceptable. Defendant McGlothren failed in her duty and responsibility for the safety and welfare of the inmates at F.C.C. Coleman U.S.P. II which violated B.O.P. PS 4042 and PS 3420.09 which in turn violated Plaintiff Hensarling's rights under the Eighth Amendment to the United States Constitution as Plaintiff Hensarling suffered pain, suffering, physical injury and emotional distress.

37. Defendant Correctional Officer of Unit I-2 (name unknown), who was on duty on the 3:30 P.M. to 11:30 P.M. Shift on April 17, 2009. Plaintiff spoke to the housing unit Officer after the 4:00 P.M. count. The officer was at the "Assigned Officer's Station" which is located in the center of the common area. This station is appropriately positioned so that the assigned officer has a 360° view of all cells within the housing area. This station is also equipped with an emergency distress activation panel which is wired to each cell. Inside each cell on the wall is a button which is connected to the officer's station. When this button is pressed, it sends off a very loud and high-pitched sound and on the panel at the Officer's Station a red light will appear as to what cell number the emergency button was activated. Additionally,

the Officer must physically go to that cell and use a specially provided key to turn off the alarm on the outside of the inmate's cell door.  It is then the responsibility of the Unit Officer to investigate the cause of the alarm and then report his investigation.

When Plaintiff spoke to the Unit Officer after the 4:00 P.M. count, Plaintiff informed the Officer of the potential threat made towards him.  However, not only did Plaintiff not see the Unit Officer again that night, Plaintiff had to go locate the Officer after the incident occurred.  The Unit Officer was in an office behind a closed door on the internet, out of eyeshot and earshot of the sight of the incident.  The Correctional Officer's actions violated B.O.P. PS 4042 and PS 3420.09 and Plaintiff Hensarling's Eighth Amendment rights of the United States Constitution causing Plaintiff pain, suffering, physical injury and emotional distress,

## VII.  CONCLUSION

The deliberate indifference of the Defendant's formed the catalyst and collectively allowed the incident for which the Plaintiff lost his eye to happen.  The Plaintiff was a medium-security inmate working at a U.S.P. UNICOR for the benefit of the Factory Manager. All named Defendant's had the responsibility for the safety of the Plaintiff.

Rather than be treated properly by the institution medical staff, the UNICOR staff, in an attempt to keep a valued employee, violated B.O.P. Policy Statements by introducing contraband in the form of an unallowed back brace (not available to Plaintiff's

- 11 -

co-workers) into the institution.  This caused jealousy among Plaintiff's co-workers and threats against him.  When informed of the threats, staff did nothing.  Plaintiff asked to be changed from the location of Inmate Azotea who had tried to coerce the brace from the Plaintiff.  Plaintiff had gone as far as requesting that he be reassigned to amother housing unit because of the threats. Nothing was done by staff to reasonably prevent the incident in which Plaintiff Hensarling lost his eye.

The Unit Officer that night was not even at his assigned station, but rather he was in a separate office on the internet which in effect left the inmates to police themselves.  This was after he had been informed of the threats against the Plaintiff by inmate Azotea who was in the same unit.  After Plaintiff had been assaulted by inmate Azotea with a lock, Plaintiff had to go and find the Unit Officer as he was not at his assigned duty station.

The Defendant's collectively failed in their responsibility of overseeing the welfare of the the Plaintiff.  Rather than have a medical give Plaintiff the proper treatment for his medical condition, Staff introduced contraband in violation of B.O.P. Policy Statement. Their actions created the atmosphere that fostered the resentment against the Plaintiff by other inmates.  When Plaintiff warned Staff that problems were being created, they did nothing.  When Plaintiff asked to be reassigned, they did nothing.  The deliberate indifference by the Defendant's violated the Eighth Amendment rights of the Plaintiff and they must be held accountable.  Because of the non-action of the Defendant, Plaintiff has lost the sight of his eye for life.

## VIII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Richard E. Hensarling humbly prays this Honorable Court will enter judgement:

39.   That the negligent actions of the Defendant's individually and collectivelly contributed to the incident in which Plantiff Hensarling permanantly lost the use of his eye, therefore violating the Plaintiffs rights under the Eighth Amendment of the United States Constitution.

40.   Grant Plaintiff Hensarling compensatory damages in the amount of $546.000.00 against each Defendant jointly and severally.

41.   Grant Plaintiff Hensarling relief under F.T.C.A. against the United States of America for the claims of negligence against all employees herein in violation of their duty, breach, causation, and damages while acting within the scope of "Standards of Employee Conduct" and under the color of Federal law in the amount of $56,400,000.00.

42.   Plaintiff seeks jury trial on all issues triable by jury.

43.   Plaintiff seeks recovery of all costs in this suit, and

44.   Any additional relief this Court deems just, proper, and equitable.

Respectfully Submitted,

August 8, 2012
_____
Date

_____
Richard E. Hensarling

- 13 -

## CERTIFICATE OF SERVICE

I certify that on August _8_ , 2012, a true and correct copy of the foregoing has been furnished to Jeffery T. Middledorf, Special Assistant United States Attorney, United States Attorney No. 117, P.O. Box 1029, Coleman, FL. 33521-1029, by U.S. Mail, First Class postage prepaid.

Richard E. Hensarling
Reg No. 09991-018
Federal Correctional Institution
P.O. Box 7007
Marianna, FL. 32447-7007

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true.  I certify under penalty of purjury, that the foregoing is true and correct.

Executed at Marianna, Florida on August _8_ , 2012.

Richard E. Hensarling

- 14 -

## ADDENDUM TO FACTS OF THE CASE

1. Plaintiff was housed at F.C.C. Coleman U.S.P. on a volunteer basis. His security level indicated that he should be housed in a medium-security level institution. However, Factory Manager Grady needed someone with Plaintiff's experience in opening the UNICOR Factory at F.C.C. Coleman, U.S.P. II.

2. Prior to the incident, Plaintiff had sought medical help at F.C.C. Coleman U.S.P. II for an umbical hernia. Plaintiff's job at the UNICOR Factory (lifting partical board), was causing the hernia to worsen. Plaintiff brought this fact to the attention of UNICOR Foreman Moody and Factory Manager Grady. They were told that Plaintiff would have to quit because of the situation and that medical would not help. Their solution was to give Plaintiff an industrial type back support, which was not available to the other inmates.

3. The contraband back support was the catalyst for the incident for which this action is being taken. Contraband as defined under B.O.P. PS 3420.09, Standards of Employee Conduct #12 is "any material that can reasonably be expected to cause physical injury or adversely affect the secutity, safety, or good order of the institution.

The exhibits herein contain **EXHIBIT-A**

1.) Floor plan drawing of the
housing unit F.C.C. U.S.P. II **EXHIBIT-A**
location assigned officers station

2.) Affidavit of Fact to weapon
     used

**EXHIBIT-A**

3.) Photo of Injury

4.) 3 letters to Courts where
Plaintiff went over and **EXHIBIT-A**
Above PLRA standards to open
a investigation

**EXHIBIT-A**

**EXHIBIT-A**

**EXHIBIT-A**

**EXHIBIT-A**



officer's station

SALLYPORT ENTRANCE

I-1

⊠ — Signifying officers assigned Desk while he is on duty where he or she has a 360° view of all cells.

I-Unit Teams office Hallway

Makeshift office supplied with Internet etc.

I-2

SALLY PORT ENTRANCE

CELLS

officers station

STAIRS

The cell I was → CELL #232
assigned to the right of

# AFFIDAVIT OF FACT

I was present the night of April 17, 2009 at F.C.C. Coleman U.S.P. II, Housing Unit I-2 and witnessed the weapon, a black face dial combination lock attached to a belt,  the accused inmate used to cause  blunt force trauma to inmate Ricky E. Hensarling, Jr. resulting in the loss of inmate Hensarling's left eye.

"I declare(or certify, verify or state), under penalty of perjury that the foregoing is true and correct."

Executed this ____5th____ day of __august__, 2010.

Inmate Signature _Michael Shawn Zilem_

Inmate Register Number_26664-180_

Inmate Full Printed Name_Michael Shawn Zilem_

(11)

## AFFIDAVIT OF FACT

I was present the night of April 17, 2009 at F.C.C. Coleman U.S.P. II, Housing Unit I-2 and witnessed the weapon, a black face dial combination lock attached to a belt,  the accused inmate used to cause  blunt force trauma to inmate Ricky E. Hensarling, Jr. resulting in the loss of inmate Hensarling's left eye.

"I declare(or certify, verify or state), under penalty of perjury that the foregoing is true and correct." Under Title 18 § 1746 yes

Executed this ___10th___ day of ___August___, 2010.

Inmate Signature ___Troy Eugene Stafford___

Inmate Register Number ___07526-025___

Inmate Full Printed Name ___Troy Eugene Stafford___

Also it need be, I will come to court due to the circumstances and nature of said criminal activity. Troy E Stafford



Date: April 17, 2009

Inmate Hensarling Reg. No. 09991-018 left eye ball hanging from the socket, gash over eye and gash over right side of head.

Photo taken by: Officer Reynolds





ate: April 17, 2009

mate Hensarling Reg. No. 09991-018 left eye ball hanging from the socket, gash over eye and sh over right side of head.

oto taken by: Officer Reynolds

Date: April 17, 2009

Inmate Hensarling Reg. No. 09991-018 left eye ball hanging from the socket, gash over eye and gash over right side of head.

Photo taken by: Officer Reynolds

Cases 5:10-cv-00344-VMC-PRL
Fort Myers, Florida 33901
239/461-2200
239/461-2219 (Fax)

207 NW 2nd Street
Room 118
Ocala, Florida 34475
352/629-0053
352/671-6743 (Fax)

**U.S. Department of Justice**
*United States Attorney*
*Middle District of Florida*
—————
*Main Office*
*400 North Tampa Street, Suite 3200*
*Tampa, Florida 33602*
*813/274-6000*
*813/274-6358 (Fax)*

200 N. Hogan Street, Room 700
Jacksonville, Florida 32202
904/301-6300
904/301-6310 (Fax)

501 West Church Street, Suite 300
Orlando, Florida 32805
407/648-7500
407/648-7643 (Fax)

---

*Reply to:*  **Ocala, FL**

November 12, 2009

Richard E. Hensarling Jr.
#09991-018
FCC Coleman-Medium
P.O. Box 1032
Coleman, FL 33521

Re:  Acknowledgment of Receipt of Complaint

Dear Mr. Hensarling:

This is to acknowledge that your complaint was received in this office on November 5, 2009.

After review of your complaint, I am forwarding it to the Federal Bureau of Investigation (FBI) for their review.  Referral to the FBI does not mean they will open an investigation concerning your complaint.  This referral simply brings your complaint to their attention.  Should the FBI need any additional information from you, I am confident that they will contact you directly.

Sincerely,

A. Brian Albritton
United States Attorney

By:  Megan Leanhart
Student Clerk

*2 North Street, Suite 903*
*Fort Myers, Florida 33901*
*239/461-2200*
*239/461-2219 (Fax)*

*300 N. Hogan Street, Room 700*
*Jacksonville, Florida 32202*
*904/301-6300*
*904/301-6310 (Fax)*

**U.S. Department of Justice**
*United States Attorney*
*Middle District of Florida*

*207 NW 2nd Street*
*Room 118*
*Ocala, Florida 34475*
*352/629-0053*
*352/671-6743 (Fax)*

*501 West Church Street, Suite 300*
*Orlando, Florida 32805*
*407/648-7500*
*407/648-7643 (Fax)*

*Main Office*
*400 North Tampa Street, Suite 3200*
*Tampa, Florida 33602*
*813/274-6000*
*813/274-6358 (Fax)*

---

*Reply to:* **Ocala, FL**

November 17, 2009

Richard E. Hensarling Jr.
#09991-018
FCC Coleman-Medium
P.O. Box 1032
Coleman, FL 33521

Re: Acknowledgment of Receipt of Complaint

Dear Mr. Hensarling:

      This is to acknowledge that your complaint was received in this office on November 12, 2009.

      After review of your complaint, I am forwarding it to the Federal Bureau of Investigation (FBI) for their review. Referral to the FBI does not mean they will open an investigation concerning your complaint. This referral simply brings your complaint to their attention. Should the FBI need any additional information from you, I am confident that they will contact you directly.

Sincerely,

A. Brian Albritton
United States Attorney

By: *Megan Leanhart*
Megan Leanhart
Student Clerk

Fort Myers, Florida 33901
239/461-2200
239/461-2219 (Fax)

Jacksonville, Florida 32202
904/301-6300
904/301-6310 (Fax)

207 NW 2nd Street
Room 118
Ocala, Florida 34475
352/629-0053
352/671-6743 (Fax)

**U.S. Department of Justice**
*United States Attorney*
*Middle District of Florida*

*Main Office*
*400 North Tampa Street, Suite 3200*
*Tampa, Florida 33602*
*813/274-6000*
*813/274-6358 (Fax)*

501 West Church Street, Suite 300
Orlando, Florida 32805
407/648-7500
407/648-7643 (Fax)

---

*Reply to:* **Ocala, FL**

January 20, 2010

Richard E. Hensarling Jr. #09991-018
Federal Correctional Complex
P.O. Box 1032
Coleman, FL 33521

Re:  Acknowledgment of Receipt of Complaint

Dear Mr. Hensarling:

This is to acknowledge that your complaint was received in this office on January 19, 2010

After review of your complaint, I am forwarding it to the Federal Bureau of Investigation (FBI) for their review.  Referral to the FBI does not mean they will open an investigation concerning your complaint.  This referral simply brings your complaint to their attention.  Should the FBI need any additional information from you, I am confident that they will contact you directly.

Sincerely,

A. Brian Albritton
United States Attorney

By:  *Megan Leanhart*
Megan Leanhart
Student Clerk

**EXHIBIT–B**

**EXHIBIT–B**

**EXHIBIT–B**

**EXHIBIT–B**

**EXHIBIT–B**

**EXHIBIT–B**

**EXHIBIT–B**

**EXHIBIT–B**

## ADMINISTRATIVE REMEDY
## TIMELINE

Richard E. Hensarling, Jr.
Register NO:09991-018
Federal Correctional Complex
Coleman (Medium)
P.O. Box 1032
Coleman, Florida
       33521-1032


1) On **4-17-09**, I Richard E. Hensarling, Jr., Bureau of Prisons Register Number #09991-018, was Assaulted by inmate Eric Azotea, due to staff negligence while being housed at F.C.C. Coleman Florida, in the United States Penitentiary at Coleman Number #2.

2) I started my Administrative Remedy Process while being housed at F.C.C. Coleman U.S. Penitentiary #2. I initially started by filing what was a BP-8, stateing that I was suffering from severe and adverse Psychological effects, and undue pain and suffering by my being housed in the **Special Housing Unit (S.H.U.)** or what is more aptly known as the HOLE. At that time I had just undergone the loss of my left eye, and was awaiting surgery to have it surgically removed.

* **NOTE: That BP-8 was filed on June 17, 2009. I received a response to that complaint on July 24th, 2009. Thirty-Seven (37) days later, saying I was pending transfer. \*(SEE EXHIBIT A)\***

3) On 7-11-09, I submitted a BP-S148.005. An inmate Request to Staff, requesting access to receive a number to use the Law Library Legal Research computer, in order to research how to proceed with Administrative Remedy Process. I was granted a password, but, was **NEVER ALLOWED ACCESS** to the use of the Law Library Facility from <u>July 11th, 2009 until October 15th, 2009</u>. *(SEE EXHIBIT B)*

4) From July 24th, 2009 until August 3rd, 2009, I did **NOT** see anyone from my Unit Team. So, I had another inmate in the SHU across from me, tell me I should write a handwritten letter to Washington pleading for help and intervention on my behalf. I mailed that out in a letter format on August 3rd, 2009. I received a response to that letter on September 17th, 2009, Forty-Five (45) days later.

* **NOTE: Washington's Response told me I needed to persue my Administrative Remedy Process within this Institution. I clearly stated in my letter that Staff was avoiding me while I was in the SHU, without any way of making contact while incarcerated there, and could not even obtain a simple Inmate to Staff Request Form while there at that time. \*(SEE - EXHIBIT C)\***

-2-

## ADMINISTRATIVE REMEDY
## TIMELINE

5)  While awaiting the response from Washington, concerning my letter from August 3rd, 2009, (**See Exhibit C,**) another inmate also locked in the SHU, that was being housed on the same floor or (Tier), observed the way I was being treated by the staff ignoring all of my needs and requests. Took it upon himself to obtain a BP-11 from his Unit Team on my behalf, and sent it to me on a fishing line under my door. He told me to file the BP-11 as a "Sensetive 11" due to the nature of my issues and my complaint, and due to the way that I was being shunned by my own Team and other staff members.

* **NOTE: This was in fact a sensetive issue, since I was being treated as a non-person throughout my ordeal after the fact that "I was the "vic-tim." Also, I filed the BP-11 on August 23, 2009, and it was not re-turned with a response until October 20th, 2009. Fifty-Eight (58) days later.  *(SEE EXHIBIT D)***

6)  While "Exhibit (D)" was still in Washington. My Unit Counseler had finally walked down my Tier I was being housed on. I got a BP-8 from her and filed that on August 18, 2009, claiming that staff negligence was the cause of me loseing my eye by the Assault on myself by inmate Eric Azotea. Her response was returned to me on September 10th, 2009. Thirty-Three (33) days later.  **\*(SEE EXHIBIT E)\***

7)  On September 3rd, 2009, I was moved (transferred) from the SHU at USP Coleman #2, to the SHU at F.C.C. Coleman (Low). I was told it was in fact due to overcrowding.

8)  I received my response to my BP-8 in **"EXHIBIT "E"** on September 10th, 2009 while in the SHU at the F.C.C. Coleman Low Facility. I then filed my, BP-9 to Warden Drew at the USP Coleman #2 on September 14th, 2009. Warden Drew received the BP-9. On September 18th, 2009, and responded to the BP-9 on that very same day.  **\*(SEE EXHIBIT F)\***

9)  Although warden Drew signed off on my Official BP-9 on September 18th, 2009. i did not receive his response until **October 14th, 2009. Twenty-Seven (27) days later.  \*(SEE EXHIBIT G)\***

* **NOTE: REGION ONLY ALLOWS TWENTY (20) DAYS TO APPEAL, INCLUDING MAILING TIME.**

10) This is where the **BREAKDOWN BEGINS**!!! While in the S.H.U. at F.C.C. Coleman (Low), and receiving the Warden's response **LATE**. I had the SHU Lieutenant Mr. S. Duden, come to my cell door, and witness the untimely reciept and delivery of my BP-9 concerning Warden Drew's response from Twenty-Seven (27) days before. The SHU Lieutenant, S.Duden, signed and dated one copy of the Wardens response underneath a hand written para-graph in my handwriting, witnessing and verifying the date, time and location when I received the document.  **\*(SEE EXHIBIT G)\***

-3-

## ADMINISTRATIVE REMEDY
## TIMELINE

11)   That same night that I received the Wardens response was delivered
to me on October 14th, 2009, and this is the same date and time that
I (myself) and Lieutenant S. Duden signed verifying that the Warden's
response was in fact delivered to me on this date <u>10-14-09</u>! While I was
being housed in the SHU pending transfer. According to the date from
the Wardens response at the bottom right hand corner, the Warden's re-
sponse was delivered to me Twenty-Seven (27) days after he signed off
on it!
    Region only allows me Twenty (20) days to respond, and this includes
mailing time. That same night, on **10-14-09**, after my getting the SHU
Lieutenant, S. Duden, to sign and verify under color of his employment
as a Federal Employee of the Federal Bureau ofPrisons, that I received
a required document needed in order to timely file my Administrative
Remedy, and his signature that my paperwork arrived late, and on the
specified date listed on the paper. I then sat down and wrote a hand-
written letter to the Region explaining my situation, and asked that I
be granted an extension of time due to extenuateing circumstances be-
yond my control. I received a response to that handwritten letter on
November 2nd, 2009. Nineteen (19) days after I had mailed it, but only
the Rejection Notice was returned to me along with the Warden's response
that Lieutenant S. Duden andmyself had signed and the handwritten letter
wasNOT INCLUDED! **\*(SEE EXHIBIT H)\***

12)   While in the SHU at F.C.C. Coleman (Low). And while going through
the only avenue I knew available to me, by advising Region of my situ-
ation, I was transferred the very next day, on **October 15th, 2009** to
F.C.C. Coleman (Medium). I was released to the Compound at 3:30 P.M.
on **10-15-09,** and that night I went to the Commissary and purchased the
items (Typing Wheel, Typing Ribbon, Correction Ribbon, Copy Card) I
needed to move on with my Administrative Remedy Process. I "Did not
wait" for a reply to the handwritten request that I wrote to Region
asking for an extension of time, because I knew I was still within my
alloted timeline. By rights, I received the Warden's Response while in
the SHU pending transfer on October 14, 2009. Iwas transferred the
very next day, on October 15, 2009. This was on a Thursday, therefore,
my Twenty (20) day appeal process **should have started on 10-16-09.**
Region stamped that they received my very first appeal try on November
5th, 2009. From October 16th, 2009 until November 5th, 2009 is Twenty
(20) days,  **\*(SEE EXHIBIT I)\***

13)   In my        rejection Notice, Region says that I am not only
"Untimely," but will also have to provide them with Official Bureau of
Prison's Letterhead, from a staff member, stating that I am not at
"fault" for my being "Untimely." I was under the impression that was
in fact just what I did with the S.H.U. Lieutenant, S. Duden, when he
signed off on the paperwork I received in **"EXHIBIT G."** Region knows
it is nearly impossible for an inmate to get staff to give any type of
Official letterhead, concerning an Adminstrative Remedy against the
F.B.O.P...

-4-

### ADMINSTRATIVE REMEDY
### TIMELINE

At that time, I was on the compund, and I went to my Unit Team, and I requested thisletterhead as I was instructed to do from Region. My Unit Team told me emphaticlly **"NO."**

I then typed a letter to the Region, explaining the S.H.U. Lieutenant's signature, thinking that maybe there was a communication misunderstanding. I also typed up twomore letters to various Government Departments, and included them in with my third(3rd) submittal of my BP-10. This was received by me on November 16th, 2009. I had it back in the U.S. Mail to the Region no later than November 20th, 2009, this was Four (4) days later.  **\*(SEE EXHIBIT J)\***

14)   I received my third (3rd) rejection Notice to my BP-10 on January 14th, 2010. It sat in my Unit Team's Office from December 21, 2009, until January 14, 2010.
I once again tryed an honest attempt to get the required B.O.P. letterhead that Region had requested of me from my Unit Team. My Unit Team even signed an Inmate Request From stating that the Legal Department here at F.C.C. Coleman (Medium) advised them **NOT TO PROVIDE ME WITH THIS LETTERHEAD!!** Therefore, I submitted my BP-10 in good faith for the Fourth (4th) time on January 26th, 2010, I had received it on January 14th, 2010, and that would make the timeline Nineteen (19) days that I had it back into Region. Timely by a day. **\*(SEE EXHIBIT K)\***

15)   I received the attempt at my Fourth (4th) BP-10, back in the mail on March 1st, 2010. It had been backin this Institution since February 7th, 2010. but, this time, I am living in a different cell and housing location, and a different Unit Manager. This Unit Manager had no problem providing me with a B.O.P. letterhead, stating the day he gave it to me. I am now awaiting the Captains assistance "Captain McManus," on this date, March 8th, 2010, to obtain the proper paperwork, with the required letterhead as requested by Region, from Lieutenant S. Duden. This will be enclosed with my BP-11 to Washington, with all Exhibits listed previously. Proper letterhead will be listed as, **\*(SEE EXHIBIT L)\***

### CONCLUSION

I would like to conclude this timeline with this thought, and facts. I have done everything in my power, to obtain all of the proper paperwork and documentation as pertains to this matter. I have been short-stopped, and prohibited at every attempt to act within the bureau's proscribed format. I wish to state that I intend to proceed with this matter into Civil litigation, and I intend to name and list all parties privy to this attempt at denying me my right to informal remedy.

Richard E. Hensarling, Jr.

**March 8th, 2010.**

PARTMENT OF JUSTICE      **REQUEST FOR ADMINISTRATIVE REMEDY**

l Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **HENSARLING RICHARD E.**   **09991-018**   **I-2**   **U.S.P. #2 COLEMAN**

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Part A- INMATE REQUEST

COUNSLERS RESPONSE TO MY BP-8 AND UNWILLINGNESS TO INVESTIGATE AND SEEK OUT THE TRUTH. IS A PRIME EXAMPLE AS TO WHY I WAS ASSAULTED ON 4-17-09 CAUSING THE LOSS OF MY LEFT EYE. UNICOR FOREMAN WERE AWARE, PSYCHOLOGY WAS AWARE, AND THE UNIT OFFICER WORKING I-2 ON THE NIGHT OF 4-17-09 HAD HE BEEN ON THE FLOOR MAKING ROUNDS COULD HAVE PREVENTED THE INCIDENT.

9-14-09
DATE            *Richard E. Hensarling*
                        SIGNATURE OF REQUESTER

Part B- RESPONSE

BP-9         See attached response.

Rec'd 9/18/09

DATE                     WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE        CASE NUMBER: 556980-F1

                                CASE NUMBER: 556980-F1

Part C- RECEIPT

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

FCC COLEMAN
BP-9 Response

*Richard Hensarling*
*# 09991-018*
CASE NUMBER: **556980-F1**

This is in response to your Request for Administrative Remedy, receipted in this office on
September 18, 2009, in which you requested administrative assistance regarding alleged
staff misconduct.  You allege staff were aware of the inmate violent disposition toward you
and also, staff not making rounds in unit, is the cause of you losing your eye.

Allegations of staff misconduct are taken seriously.  Your request was reviewed and
forwarded to an appropriate office for further disposition.  Complaints against staff are
never ignored; however, inmates are not advised of the outcome of these
investigations.

Based on the above information, this response is for **Informational Purposes Only.**

If you are dissatisfied with this response, you may appeal by filing a BP-10 to the
BUREAU OF PRISONS, SOUTHEAST REGIONAL OFFICE, ATTN: REGIONAL
DIRECTOR, 3800 Camp Creek Parkway, SW, Building 2000, Atlanta, GA 30331-6226,
within (20) calender days from the date of this response.

_____                    _____
D. B. Drew, Warden                                          Date



I Richard E. Hensarling ðr Received This
Paperwork While In The S.H.U. At Coleman F.C.C.
Low The Evening Of 10-14-09. I Am Pending
Transfer And Have Already Been Re-Designated,
Therefore I Am Requesting A Extension. Thank
You.
S. Duden SHU Lt.
10/14/2009

RECEIVED
OCT 20 2009
REGIONAL COUNSEL'S OFFICE-SERO
BUREAU OF PRISONS

FEB - 2 2010

S.H.U. Lieuten ant Initialed
And Verified That This Was
The Date I Received This
Response

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 21, 2009

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : RICHARD EARL HENSARLING JR, 09991-018
      COLEMAN MED FCI      UNT: B 1-2     QTR: B03-980L
      P.O. BOX 1022
      COLEMAN,  FL 33521

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 556980-R1        REGIONAL APPEAL
DATE RECEIVED  : OCTOBER 20, 2009
SUBJECT 1      : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOUR APPEAL IS UNTIMELY.  REGIONAL APPEALS (BP-10)
                 MUST BE RECEIVED WITHIN 20 DAYS OF THE WARDEN/CCM
                 RESPONSE OR RECEIPT OF THE DHO REPORT.  THIS TIME
                 INCLUDES MAIL TIME.

I RECEIVED THE WARDENS
RESPONSE TO MY BP-9 27
DAYS FROM THE DATE THAT HE
SINGED SIGNED OFF ON IT

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 6, 2009

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : RICHARD EARL HENSARLING JR, 09991-018
      COLEMAN MED FCI    UNT: B 1-2    QTR: B03-980L
      P.O. BOX 1022
      COLEMAN, FL 33521


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID        : 556980-R2        REGIONAL APPEAL
DATE RECEIVED    : NOVEMBER 5, 2009
SUBJECT 1        : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: YOUR APPEAL IS UNTIMELY.  REGIONAL APPEALS (BP-10)
                 MUST BE RECEIVED WITHIN 20 DAYS OF THE WARDEN/CCM
                 RESPONSE OR RECEIPT OF THE DHO REPORT.  THIS TIME
                 INCLUDES MAIL TIME.

REJECT REASON 2: SEE REMARKS.

REMARKS          : YOU MUST PROVIDE STAFF VERIFICATION ON BOP
                   LETTERHEAD THAT YOU ARE NOT RESPONSIBLE FOR
                   THE UNTIMELY FILING OF THIS APPEAL.



March 21st, 2009

## ADDENDUM TO ADMINISTRATIVE TIMELINE
## OFFICIAL LETTERHEAD FROM BUREAU OF PRISONS ADMINISTRATION
## SWORN DECLARATION FROM LIEUTENANT S. DUDEN

### (AS PERTAINS TO " EXHIBIT G ")

Richard E. Hensarling, Jr.
Register No:09991-018
Federal Correction Complex
Coleman (Medium)
P.O. Box 1032
Coleman, Florida
   33521-1032
**************************************************************************

RE:Signature verification by Lieutenant S.Duden, S.H.U. Lieutenant, at
 the time inmate received late response as to Adminstrative Procedure
 while in the Special Housing Unit at Coleman (Low).
**************************************************************************

To the effect that this paperwork, as per request by the Regional Office,
as to the authenticity of the Officer in question, (Lieutenant S. Duden)
Special Housing Unit, at Coleman, Florida, (Low). Shows that on Official
Letterhead, as from Federal Bureau of Prisons Staff, concerning this Off-
icer's statement of fact, that he was in fact present at the time that
this inmate received his response, to-wit, a BP-9 from the Warden, (Drew)
was delivered to this inmate on October 14th, 2009. Yet, it was actually
signed off on by the Warden (Drew) on September 18th, 2009. (See EXHIBIT G)

This was the only document missing from this inmate's paperwork, that was
hinged on his Adminstrative Remedy being denied, time and time again, by
the Regional Director's Office.

This paperwork in fact proves that this inmate never misled or lied con-
cerning this paperwork, or the fact that it was delivered late to this
inmate while in the S.H.U. at Coleman (Low).

I swear under the penalty of perjury that all statements in this document
are in fact true, and correspond exactly as I outlined them in my BP-11
to your office.

Respectfully submitted,

Richard E. Hensarling, Jr.

March 21st, 2010

## ADDENDUM TO ADMINISTRATIVE REMEDY
## BP-11 FILED ON MARCH 10, 2010

**\*NOTE:** This paperwork was delivered to this inmate by Captain McManus, at F.C.C. Coleman, (Medium) on March 19, 2010. This being a Friday, leaving inmate to file this as Institution Policy permits, on a Wednesday, March 24, 2010.

(THIS IS ADDENDUM TO TIMELINE, AND EXHIBIT "G")



**UNITED STATES GOVERNMENT**

# memorandum

**FEDERAL BUREAU OF PRISONS**
Federal Correctional Complex
Coleman, Florida 33521

---

**MEMORANDUM FOR:**   G. McManus, Captain

**FROM:**   S. Duden, Lieutenant
**DATE:**   March 7, 2010

**SUBJECT:**   Inmate Hensarling #09991-018 Case # 556980-F1

This is my signature n the BP-9 response, Case Number: 556980-F1.
This inmate did receive this piece of mail on the date indicated by my
signature.

Inmate Received this memoradum
on 3-15-2010   1330pm. From
Cqpt McMan
G. McManus

The Exhibits Herein
merely show the work
Ethics and Attitudes at
F.C.C. Coleman while
Plaintiff was housed
there.

**EXHIBIT-C**

**EXHIBIT-C**

**EXHIBIT-C**

**EXHIBIT-C**

**EXHIBIT-C**

**EXHIBIT-C**

**EXHIBIT-C**

**EXHIBIT-C**

# Eight hurt in prison fight

Inmates are involved in a "large-scale fight" at the Coleman federal complex.

**BY RITA FARLOW**
*Times Staff Writer*

Eight male inmates were injured with at least one suffering a gunshot wound, when a "large-scale fight" broke out at a federal prison northwest of Orlando on Sunday, according to the Federal Bureau of Prisons.

It started in the recreation yard of a high security unit at the Coleman Federal Correctional Complex around 2:20 p.m., said Traci Billingsley, a spokeswoman for the Federal Bureau of Prisons.

Billingsley said no staff workers or guards were seriously injured and no inmate had a firearm at any time. She had no immediate information on the condition of the inmates.

Asked later Sunday about the injuries, she said that "one is gunshot, but I don't know about the others."

A Coleman spokesman, Charles Ratledge, said prison staff fired shots when inmates ignored orders to stop fighting.

Billingsley said she had no further details about how it began or how many inmates were involved. The fight was brought under control and nearby residents were never at risk, she said.

The Orlando Regional Medical Center confirmed that seven people from the prison were hospitalized, six inmates and one "corrections official," said hospital spokesman Joe Brown.

» See INMATES, 6B

» INMATES continued from 1B

# Eight hurt in fight at Coleman prison

Billingsley insisted Sunday that "none of the staff was seriously hurt."

All of the inmates were under the watch of armed prison guards as the hospital's emergency room was put into lockdown.

"That's pretty much standard procedure. It's protocol for something like that," said Brown.

He said the patients had injuries consistent with either shootings or stabbings. "My understanding was it was a combination of gunshot wounds and stabbing wounds," said Brown.

An eighth person was taken to Leesburg Regional Medical Center. Officials there confirmed they received one patient from the prison. Nursing supervisor Kayce Walker said she did not know if the patient was an inmate or a corrections staffer.

No names of the injured were released.

The FBI is investigating the incident.

The prison complex has four units that house low-, medium- and high-security male inmates

and an adjacent, minimum-security camp of female offenders.

Matthew Cox, the former Tampa mortgage broker accused of masterminding millions of dollars in loan fraud in five states, was sent to Coleman after he was sentenced to more than 26 years in prison in November 2007. It was unclear Sunday which unit Cox was in.

One of Coleman's most prominent inmates, former newspaper baron Conrad Black, is housed in a low-security unit away from where Sunday's fighting broke out.

Last year, Black reported to Coleman to begin a 6½-year sentence for fraud and obstruction of justice for swindling shareholders of the Hollinger International media empire.

A Federal Bureau of Prisons Web page lists the total number of inmates at the complex as 7,294 as of last week. The unit where the fight broke out houses 1,659 inmates.

Sunday's fight follows a fatal stabbing at the prison in 2007.

The Sumter County prison also

made headlines in 2008 when five guards and several other workers were arrested and charged with bribery-related offenses for accepting up to $20,000 to smuggle drugs, weapons and cell phones into the complex.

The prison is approximately 60 miles northeast of Tampa and 35 miles south of Ocala.

*Information from the Associated Press and the Orlando Sentinel was used in this report.*



Coleman Federal Correctional Complex

Times

Federal prison boosts security, builds relations - OrlandoSentinel.com     http://www.orlandosentinel.com/news/local/lake/os-lk-coleman-pris...

orlandosentinel.com/news/local/lake/os-lk-coleman-prison-tries-to-burnish-ima20100123,0,2675324.story

# OrlandoSentinel.com

## Federal prison boosts security, builds relations

By Martin E. Comas, Orlando Sentinel

11:55 PM EST, January 23, 2010

COLEMAN — In hopes of polishing its image after a series of corruption scandals, riots and inmate abuses, the nation's largest federal prison kicked off the new year with a community outreach effort during which wardens gave an overview of beefed-up security measures.

The enhanced security comes in the wake of two uprisings, a fight in January 2009 that left eight inmates seriously hurt with stab and gunshot wounds and a March brawl that seriously injured 14 inmates.

New measures at the Federal Correctional Complex in Sumter County include:

•Deploying special search squads that collect homemade weapons and other contraband by randomly searching inmates.

•State-of-the-art perimeter-detection camera systems.

•High-tech body-scan machines to prevent inmates from bringing in or taking out contraband from the facility.

•A Crime Stoppers program at its two high-security wings to allow inmates to use cellblock phones to anonymously report tips about other inmates.

"We took a look [at our facility] and came up with ideas on how to improve our security," associate warden Bill Bechtold said. He said the prison plans to add two additional body-scan machines this year.

With just over 7,100 inmates, the sprawling complex has five sections: two high-security institutions and separate low- and medium-security facilities – all for males – and a camp for female inmates.

**'Part of the community'**

In the past, prison officials have been tight-lipped about problems, but officials say they are trying to

Federal prison boosts security, builds relations - OrlandoSentinel.com    http://www.orlandosentinel.com/news/local/lake/os-lk-coleman-pris...

be more open and accessible. For example, quarterly community relations board meetings typically draw a smattering of mostly prison administrators and local business people.

But more than 75 people took part in the most recent meeting earlier this month including members representing a variety of business, social, educational, public-safety and government agencies.

The chicken and steak meal was prepared by inmates enrolled in job-skills training program.

"This is an opportunity for us to build relations with the community and let them know that we're part of the community, too," said Tamyra Jarvis, warden of the low-security institution.

Officials followed up that event last week by inviting news-media representatives for a prison tour that included briefings from top brass and a question-and-answer session.

**Dogged by bad publicity**

The prison is trying to repair an image tarnished by corruption and bad publicity in recent years.

In October, a former corrections officer was sentenced to life in prison after arranging to have an inmate killed. Erin Sharma, a 33-year-old wife and mother who worked at the prison in 2005, sought revenge against inmate Richard Delano because he grabbed her arm and bruised her, according to records. She then put Delano into a cell with a known violent inmate who beat him to death, prosecutors said.

In September, a U.S. Justice Department study of 93 federal corrections facilities showed that the Coleman prison led the nation in reports of sexual misconduct – including rapes and affairs – between prisoners and workers. From 2001 through 2008, the Coleman complex had 80 reports of sexual abuse of inmates during that time, according to the report.

In 2008, nine employees, an inmate and a correctional officer's girlfriend were charged as part of a smuggling operation at the Coleman prison.

**'I was impressed'**

The prison has about 1,320 employees and hired 106 new corrections officers in the past year, with salaries starting at $38,700. It currently has about two dozen vacancies for corrections officers, officials said.

"We are currently hiring," said Kevin Rison, the prison's employee services manager.

Dianne Sharpless, of the prison's employee-services department, said the facility also hopes to fill additional medical positions this year, including nurses, paramedics, doctors and dental hygienists.

Sumter Commissioner Dick Hoffman noted that the prison is the second-largest employer in the county.

"I was impressed," Hoffman said after this month's luncheon. "They are an important part of our community."

*Note: This is a internet conversation from one B.O.P. Correctional officer at Coleman, While on Duty over a internet forum office.*

Police Forums & Law Enforcement Forums @ Officer.com > Officers and Law Enforcement Professionals ONLY > The Big House: Corrections Forums > Fed Bureau of Prisons - Florida - Coleman

PDA

View Full Version : Fed Bureau of Prisons - Florida - Coleman

dannmann105001-29-2009, 09:34 PMAnyone have any idea what a day in the life is like in Fed. Pen.?? I've done County Jail scenes... just wondering what it's like at the Fed level since they are hurting pretty bad from what I have read/seen...

Thanks!!

BE SAFE!!!

LS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, 09:55 PMThey just had a recent major disturbance earlier this week. Staff and multiple inmate injuries- one inmate with a GSW from a tower officer. Lots of scumbags imprisoned at Coleman. Lots of gangs. Lots of lockdowns. I know someone who recently transferred down there and they say it's nuts. Nothing but problems: avoid.

Coleman is the largest prison complex in America, and the largest in the Fed. There are 2 USPs, 2 FCIs, and a large camp.

dannmann105001-29-2009, 09:58 PMThanks for the response.. I live about an hour away and saw all that nonsense that happened on the news... Only reason I along with some others are considering it, good money and full-time.. Economy has killed the road jobs.. so.. in the mean time.. gotta consider plan B..

LS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, 10:02 PMThanks for the response.. I live about an hour away and saw all that nonsense that happened on the news... Only reason I along with some others are considering it, good money and full-time.. Economy has killed the road jobs.. so.. in the mean time.. gotta consider plan B..

Consider very carefully. :cool:

Iowa #160301-29-2009, 11:24 PMAccording to my sources in the BOP

ANY federal BOP institution=
Very Good money
pretty good equipment
No mace/OC/Batons inside the walls/fence
You are considered Federal Law Enforcement

lots of BS treatment by supervisors/managers
lousey training

Of those who I have talked to that have prior CO experience.................
the only reason to go to the feds is $$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$
Everything else is better in the state ranks.

dannmann105001-29-2009, 11:34 PMdoes anyone know the kinds of shifts they work..8/10/12's?? I've seen

"several options" but nothing that says work schedule, rotation or perm. shifts..

Heck.. I even saw a website for BOP uniforms...do they have to buy their stuff or is it issued??

LS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, 08:16 AMdoes anyone know the kinds of shifts they work..8/10/12's?? I've seen "several options" but nothing that says work schedule, rotation or perm. shifts..

Heck.. I even saw a website for BOP uniforms...do they have to buy their stuff or is it issued??

5/2 schedule. Some institutions (such as mine) have limited 6-2 , 1-9, and 2-10 posts. All others are 8-4, 4-12, 12-8. Plenty of OT and mandates (forced OT) at Coleman, so the money can be good. I disagree that the money is good, however. But it depends on your area.

For your probationary year, you are on monthly schedules. After your probie year is up, you can bid for posts and days off that change every quarter. Without any seniority, you're pretty much doomed to the crap posts with crap days off that nobody wants.

We are given $400 per year for uniforms.

dannmann105001-30-2009, 09:52 AMexcellent info... anything else one should "know"??

LS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, 04:04 PMexcellent info... anything else one should "know"??

Training is weak, but if you have prior experience, you're all set. First, you get two weeks at the home institution called "Institutional Familiarization" which is pretty much a snooze. The main training you'll go to GA for. It's a 3 week keg party... I mean, program, down in Glynco, GA at the FLETC. Cakewalk. Down there you'll have to pass a PT consisting of:

1/4 mile run and cuff in 2:30.
Ladder climb in 7.5 seconds.
75 lbs. dummy drag for 700 ft.
Obstacle course in 60 seconds.
Stair climb with 20 lbs. duty belt in 45 seconds

If you can tie your shoes, you'll pass. You also have to pass three exams and show proficiency in contraband search and firearms. It's designed so nobody's feelings are hurt and everyone passes. Just don't get arrested and you'll go home with nothing more than a hangover and empty wallet.

The background check is your standard SSBI. With few exceptions, they go back 7 years. As long as you have no convictions for felonies or domestic violence, or any other red flags, you can pass the BI. They take credit VERY seriously, so if you've had trouble paying your bills within the last 7 years, you're out. Defaulting on loans (especially federal loans) is an automatic DQ. I've seen a couple staff members forced to resign or get walked-out after credit checks revealed they weren't paying their bills.

If you have any other questions, let me know...

dannmann105001-30-2009, 07:51 PMAre the shifts perm. once you get past probie?? or do they rotate with set days off?? For the pay stucture..Do you get steady raises; or what you see now is what you'll see in 10 years.. kinda stuff? On Site.. Is there ample co-workers to get the job done, or are you working solo and letting the

~~prisoners run the hen-house persay??LOL.. i've read that BOP is under HORRIBLE staffing at certain locations..~~

For the forced OT... Is it double's or just holdover for 4... Is it everyday you have OT issues, or do they (admin) rotate the wealth so that the same person doesn't get screwed day after day after day?

Thanks for all the info...

LS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, 08:35 PMAre the shifts perm. once you get past probie??

No. You bid against other officers for posts every quarter. So if you're high in seniority, you get the good picks and good days off. You must do "sick and annual" once per year; so you cover vacation and sick time and work various posts during that time. The BOP expects you to rotate through every shift every three year period.

For the pay stucture..Do you get steady raises; or what you see now is what you'll see in 10 years kinda stuff?

Corrections officers are GL-5/6/7. That means you move from 5 to 7 each year until you reach 7. You must compete for GL-8/9/11/12/13. You start as either a GL-05 or GL-06, step 1 (depending upon experience). The next year, you move up one grade (From GL-5 to 6, or GL-6 to 7), and move up one step. So if you start as a GL-06, step 1, after three years, you'll be a GL-07 step 4. After step 5, it takes two years to move up a step. Again, you have to compete to move up another grade. GL-8's are rank "Senior Officer Specialist", which is just an experienced officer. GL-9/11 are Lieutenants. GL-11/12/13 are Captains.

On Site.. Is there ample co-workers to get the job done, or are you working solo and letting the prisoners run the hen-house persay?? LOL.. i've read that BOP is under HORRIBLE staffing at certain locations..

Depends upon the institution and post. For example, the Special Housing Units often have more than two officers on duty at a time. That amount may change with each shift. Medium security units may only have two officers for every 100 inmates. I had no previous experience in corrections and my first day involved running a low security cubicle-style unit on 255 inmates by myself. Also, all BOP employees are considered "correctional officers first", which means all employees, regardless of job title (case worker, chaplain, business officer, medical, etc.) are "required" to respond to incidents as if they were corrections officers.

For the forced OT... Is it double's or just holdover for 4... Is it everyday you have OT issues, or do they (admin) rotate the wealth so that the same person doesn't get screwed day after day after day?

A mandate can be anywhere from 2 hours to 8 hours. Some institutions have mandate problems due to staffing levels, or inmate problems. Example: Coleman is on lockdown. That means 12 hour shifts until they come off lockdown. So you're mandated for 4 hours each day until the lockdown is called-off.

dannmann105001-30-2009, 08:43 PMThanks LS1..

To get up in Senority.. does hell have to freeze over, or is the turnover/turnaround about average?? Are you allowed to bring a laptop if your on a out-lying post.. or do you have to just sit and watch your life fade away??

Does have the Fed. Pen experience on the ol' resume help with other Federal agencies, or nobody on the Fed

level care about the BOP crew? And.. This one I can't seem to get a straight answer on..

As you have read.. I'm looking at Coleman.. Can you be a RESERVE LEO outside of Fed. Pen life?? I have heard yes and no.. I don't know if your in Florida or not.. But the Reserves here are on vol. status for the most part and not a "scheduled job".. just a kinda when you roll in/out to get your hours for the month..

LS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, 09:19 PM To get up in Senority.. does hell have to freeze over, or is the turnover/turnaround about average??

Depends on the joint. Some joints are the stereotypical "Club Fed" types where officers get comfortable and don't like to leave or promote out. If you haven't heard of them, there's a reason for that. Other joints (particularly the notorious USPs) are revolving doors where staff leave for personal reasons, or transfer to other prisons for promotions, or get hired by other federal agencies. You'd move up fairly quickly at a joint like Coleman.

Are you allowed to bring a laptop if your on a out-lying post.. or do you have to just sit and watch your life fade away?

The BOP has "Internet-connected computers. You are not allowed to bring in any laptops, iPods, diskettes, USBs, pern drives, or any other writable media. There is a policy regarding appropriate use of computers.

Does have the Fed. Pen experience on the ol' resume help with other Federal agencies, or nobody on the Fed level care about the BOP crew? And.. This one I can't seem to get a straight answer on..

It would definitely help if you want to move up in the BOPverse. If you ever want to see Lieutenant, or especially Captain, you must have experience at a USP. It;s somewhat of an "unwritten rule". If you are mobile and want to move up, the BOP is the place. If you bounce from join-to-joint, you will move up in pay and promote quickly. Many of the top brass in the DC offices who make ungodly amounts of money started off as mere entry-level corrections officers.

As for other agencies, the BOP is one of the dregs of federal law enforcement. We're not exactly viewed as the greatest group of people at the FLETC. The actions of a few dopes have tarnished the BOP image in the FLE community. That hasn't stopped many of us (me included), from applying and getting hired by other federal agencies. Many ex-BOP have gone on to work for the Border Patrol, Federal Air Marshal Service, the DEA, ICE, FBI, CBP, USMS, and many local and state agencies. 4 guys from my facility were recently hired by ICE. After 9/11, 50 guys left my joint for the FAMS; 20 more in 2005. If you do your job and can relate your law enforcement experience, you have a good chance of going anywhere. The sky is the limit.

As you have read.. I'm looking at Coleman.. Can you be a RESERVE LEO outside of Fed. Pen life??

The answer is a solid NO. The BOP will tell you this exact statement: "The BOP is your primary job. The needs of the institution are priority". You cannot hold any other armed law enforcement position while employed with the BOP. Military reserves are a different story. You may hold a second job with approval from the Warden.

dannmann105001-30-2009, 09:34 PM Hmm.. Well.. The LEO issue has just dampened the interest level.. actually.. that just burst the balloon

Thanks again for all the information.. You have provided a ton more than anything I can google.

Jimmooch02-01-2009, 06:09 PMCan Fed Officers carry off duty Im also looking at Coleman trying to weigh it against county prison. State pays too little in Florida

LS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, 07:38 PMCan Fed Officers carry off duty

Yes.

dannmann105002-02-2009, 01:15 PMFor those in "urgent need" of CO's.. What is a ideal timeline for hiring??

LS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, 01:43 PMFor those in "urgent need" of CO's.. What is a ideal timeline for hiring??

I've heard as little as 3 weeks.

Patrio7202-04-2009, 03:53 PM1) What does a new hire do at the prison for 2 weeks before reporting to academy?

2) I scored an 88 on my application. Based on that score, what are my chances of being added to the certificate of eligible candidates? I am hoping to get picked up by Milan but the staff level is small compared to Coleman. (I did contact both locations via email but haven't heard back yet.)

3) Even though I selected FCI Milan first and FCI Coleman second, will I still be considered for Coleman or do they only look at the first choice?

Thanks!
Patriot72

TheKansan02-04-2009, 04:15 PMDepends upon the institution and post. For example, the Special Housing Units often have more than two officers on duty at a time. That amount may change with each shift. Medium security units may only have two officers for every 100 inmates. I had no previous experience in corrections and my first day involved running a low security cubicle-style unit on 255 inmates by myself. Also, all BOP employees are considered "correctional officers first", which means all employees, regardless of job title (case worker, chaplain, business officer, medical, etc.) are "required" to respond to incidents as if they were corrections officers.


That explains a lot. I was wondering why all positions with the BOP listed on USAJOBS offer the law enforcement retirement. I also was wondering why all positions with the BOP were required to attend fletc.

LS1

Exhibits herein
F.T.C.A. against the
United STATES OF America

**EXHIBIT–D**

**EXHIBIT–D**

**EXHIBIT–D**

**EXHIBIT–D**

**EXHIBIT–D**

**EXHIBIT–D**

**EXHIBIT–D**

**EXHIBIT–D**

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the Instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
| --- | --- | --- |

| 1. Submit To Appropriate Federal Agency: SOUTHEAST REGIONAL COUNSEL'S OFFICE 3800 CAMP CREEK PKWY SW BDLG 2000 ATLANTA, GA 30331 | 2. Name, Address of claimant and claimant's personal representative, if any. (See Instructions on reverse.) (Number, Street, City, State and Zip Code) RICHARD E. HENSARLING Jr. FEDERAL CORRECTIONAL COMPLEX P.O.BOX#1032 MEDIUM COLEMAN, FL. 33521 |
| --- | --- |

| 3. TYPE OF EMPLOYMENT □ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH 5-18-64 | 5. MARITAL STATUS DIVORCED | 6. DATE AND DAY OF ACCIDENT 4-17-09 Friday | 7. TIME (A.M. OR P.M.) P.M. |
| --- | --- | --- | --- | --- |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.) I WAS THE VICTIM OF AN ASSAULT DUE TO THE NEGLIGENCE OF B.O.P. STAFF AT COLEMAN F.C.C. U.S.P.#2 ON ABOVE DATE IN UNIT I-2 BY INMATE ERIC AZOTEA. THIS ASSAULT CAUSED ME TO HAVE MY LEFT EYE SURGICALLY REMOVED, LEAVING ME DISFIGURED AND HANDICAP FOR LIFE.

| 9. | PROPERTY DAMAGE |
| --- | --- |

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code). NONE

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.) MY LEFT EYE IS GONE, THE DAMAGE IS ON MY PERSON.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
| --- | --- |

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT. THIS INJURY HAS CAUSED ME GREAT PAIN, SUFFERING, AND MENTAL ANGUISH. THIS DISABILITY WILL NOW RENDER ME UNABLE TO WORK IN MY CHOSEN PROFESSION AS A INDUSTRIAL CARPENTER.

| 11. | WITNESSES |
| --- | --- |
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| JIMMY WILSON TROY STAFFORD MIKE OSTRANDER SHAWN ZILEM | LAST KNOWN ADDRESS: COLEMAN F.C.C. U.S.P.#2 P.O.BOX #1034 COLEMAN, FL.33521 |

| 12. (See instructions on reverse.) | | AMOUNT OF CLAIM (in dollars) | |
| --- | --- | --- | --- |
| 12a. PROPERTY DAMAGE punitive jury decide | 12b. PERSONAL INJURY $2,000,000.00 | 12c. WRONGFUL DEATH NONE | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) $2,000,000.00 plus |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) *Richard E. Hensarling Jr.* | 13b. Phone number of person signing form NONE AVAILABLE | 14. DATE OF SIGNATURE 11-13-09 |
| --- | --- | --- |
| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING CLAIM OR MAKING FALSE STATEMENTS | |
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) | |

| 95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
| --- | --- | --- |

MY COPY



## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

**15. Do you carry accident insurance?** ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☒ No

NONE AVAILABLE CURRENTLY INCARCERATED

**16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?** ☐ Yes ☒ No | **17. If deductible, state amount.**   ☐ zero

NONE AVAILABLE CURRENTLY INCARCERATED

**18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?** (It is necessary that you ascertain these facts.)

NONE AVAILABLE CURRENTLY INCARCERATED

**19. Do you carry public liability and property damage insurance?** ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☒ No

NONE AVAILABLE CURRENTLY INCARCERATED

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims presented under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95   BACK

MY COPY

U.S. Department of Justice
Federal Bureau of Prisons
*Federal Correctional Complex*
P.O. Box 1029
Coleman, Florida   33521-1029

---

**RETURN RECEIPT**
7008 3230 0002 5015 3106

Richard Hensarling, Jr.
Reg. No. 09991-018
Federal Correctional Complex
Medium Security Institution
P.O. Box 1032
Coleman, FL  33521

**RE: Administrative Tort Claim Numbers TRT-SER-2010-00883**

Dear Claimant:

Your claims have been considered for administrative settlement under the Federal Tort Claims
Act (FTCA), Title 28 United States Code (U.S.C.) Section 2672 et seq., and authority granted by
Title 28 Code of Federal Regulations (C.F.R.) Section 0.172.  Section 2672 of the FTCA
delegates to each federal agency the authority to consider, determine and settle any claim for
money damages against the United States for loss of personal property or injury caused by the
negligent or wrongful act or omission of any employee of the agency while acting within the
scope of his office or employment.

You are seeking monetary damages in the amount of $2,000,000.  Specifically, you claim you
were assaulted on April 17, 2009, by another inmate causing your eye to be surgically removed
leaving you disfigured, handicapped for life, and unable to work.  Lastly, you claim deliberate
indifference and a violation to your constitutional rights.

We have reviewed your claim along with reports from appropriate staff members.  To the extent
you believe there is staff misconduct, your allegation has been referred for appropriate
investigation.

The investigation conducted into this matter reveals that on April 17, 2009, you were escorted to
the Health Services department for evaluation and treatment of your left eye.  You informed staff
that you had fallen down the stairs because you were drunk since you had been drinking a
homemade intoxicant, approximately two cups.  Upon medical examination, your eye was found

to be protruding from the socket and you also you had a cut on your right side of the scalp. You were immediately transferred to the outside local hospital.

*NEVER MADE NO SUCH Statement*

Further investigation reveals you returned from the outside local hospital on April 19, 2009. Upon your return from the hospital, you informed staff you were "blindsided." Staff reviewed the video dated April 17, 2009, and discovered that you had in fact been assaulted by another inmate inside your cell. Although it now seems you claim staff were negligent for their alleged failure to protect, there is no evidence that staff knew or should have known that a threat existed against your safety. In fact, you failed to provide staff with truthful and accurate information after the assault. Therefore, there is no negligence in this regard.

It is noted that in addition to your negligence claim, you allege deliberate indifference. The FTCA is a limited waiver of sovereign immunity for certain tort actions, and does not provide a vehicle for the presentation of constitutional claims. As such, your claim of deliberate indifference is not cognizable in this forum.

To the extent you raise constitutional claims, civil rights claims are not within the purview of the FTCA. In accordance with 28 U.S.C. § 1346(b), the FTCA is a limited waiver of sovereign immunity providing compensation for property loss or personal injury which results from the negligent or wrongful act or omission of an employee of the United States who is acting within the scope of his employment. This statute does not establish a compensatory scheme or cause of action for alleged violations of the Constitution of the United States.

Based on the above, there is no evidence to indicate that you have sustained an injury or loss caused by the negligent or wrongful act or omission of any Bureau of Prisons employee acting within the scope of his or her employment. Therefore, your claim is denied.

You are advised that if you are dissatisfied with our determination in this matter, you are afforded six (6) months from the date of the mailing of this communication within which to bring suit in the appropriate United States District Court.

Sincerely,

Jeffrey Campbell
Supervisory Attorney

4/14/10
Date